

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET



**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed January 29, 2008**

**United States Bankruptcy Judge**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| VERNON H. WHITE AND | § | CASE NO. 06-50247-RLJ-13 |
| DAWN M. WHITE, | § | |
| | § | |
| DEBTORS | § | |

### **MEMORANDUM OPINION**

Before the Court are the debtors' objections to the following proofs of claim: Claim Number 8, Claim Number 9, Claim Number 10, and Claim Number 12. B-Line, LLC filed a response to the objections to Claim Numbers 8, 9, and 10; B-Real, LLC filed its response to the objection to Claim Number 12.

The Court has jurisdiction over this matter under 28 U.S.C. § 1334(b); this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B). This Memorandum Opinion contains the Court's findings of fact and conclusions of law. Bankruptcy Rule 7052.

**Statement of Facts**

Claim Number 8 was filed December 12, 2006; the named claimant is "B-Line,

LLC/Collect America/HOUSEHOLD BANK"; the amount of the claim, designated as an

unsecured claim, is $3,166.93; the last four digits of the account number for the claim are 1046;

an "Account Summary" attached to the proof of claim states that the original creditor was

HOUSEHOLD BANK and that the "Related Account Number" is 0175 (the last four digits). On

July 13, 2007, a document titled "Transfer of Claim Other than for Security" was filed regarding

Claim Number 8 in accordance with Rule 3001(e)(2) stating that Roundup Funding, L.L.C. is the

transferee of the claim and that B-Line, LLC/Collect America is the transferor; it refers to account

number 1046. On October 3, 2007, Claim Number 8 was amended.[1] Amended Claim Number 8

states that the claimant is Roundup Funding, L.L.C.; the account number is 1046; the amount is

$3,166.93. Included with Amended Claim Number 8 is a copy of an "Assignment of Accounts"

dated November 15, 2006, which recites that Collect America, Ltd., as seller, transfers and assigns

several accounts to B-Line, L.L.C. as buyer. The assigned accounts are not identified. The Court

will refer to the holder of Claim Number 8 as "B-Line."

Claim Number 9 was filed December 12, 2006; the named claimant is "B-Line,

LLC/Collect America/HOUSEHOLD BANK"; the amount of the claim, designated as an

unsecured claim, is $731.06; the last four digits of the account number for the claim are 5261; an

"Account Summary" is attached to the proof of claim stating that the original creditor was

HOUSEHOLD BANK. On July 13, 2007, a document titled "Transfer of Claim Other Than For

---

[1]The Amended Claim was not offered into evidence; the Court takes judicial notice of Amended Claim Number 8.

Security" was filed regarding Claim Number 9 in accordance with Rule 3001(e)(2) stating that Roundup Funding, L.L.C. is the transferee of the claim and that B-Line, LLC/Collect America is the transferor; it refers to account number 5261. On October 3, 2007, Claim Number 9 was amended.[2] Amended Claim Number 9 states that the claimant is Roundup Funding, L.L.C.; the account number is 5261; the amount is $731.06. Included with Amended Claim Number 9 is a copy of an "Assignment of Accounts" dated November 15, 2006, which recites that Collect America, Ltd., as seller, transfers and assigns several accounts to B-Line, L.L.C. as buyer. The assigned accounts are not identified. The Court will refer to the holder of Claim Number 9 as "B-Line."

Claim Number 10 was filed December 12, 2006; the named claimant is "B-Line, LLC/Collect America/HOUSEHOLD BANK"; the amount of the claim, designated as an unsecured claim, is $2,231.72; the last four digits of the account number for the claim are 1779; an "Account Summary" attached to the proof of claim states that the original creditor was HOUSEHOLD BANK and that the "Related Account Number" is 0003 (the last four digits). On October 3, 2007, a document titled "Transfer of Claim Other than for Security" was filed regarding Claim Number 10 in accordance with Rule 3001(e)(2) stating that Roundup Funding, L.L.C. is the transferee of the claim and that B-Line, LLC/Collect America is the transferor; it refers to account number 1779. On October 3, 2007, Claim Number 10 was amended.[3] Amended Claim Number 10 states that the claimant is Roundup Funding, L.L.C.; the account

---

[2]The Amended Claim was not offered into evidence; the Court takes judicial notice of Amended Claim Number 9.

[3]The Amended Claim was not offered into evidence; the Court takes judicial notice of Amended Claim Number 10.

number is 1779; the amount is $2,231.72. Included with Amended Claim Number 10 is a copy of an "Assignment of Accounts" dated November 15, 2006, which recites that Collect America, Ltd., as seller, transfers and assigns several accounts to B-Line, L.L.C. as buyer. The assigned accounts are not identified. The Court will refer to the holder of Claim Number 10 as "B-Line."

Claim Number 12 was filed December 26, 2006; the named claimant is "B-Real, LLC/Chase Bank USA, N.A."; the amount of the claim, designated as an unsecured claim, is $3,908.82; the last four digits of the account number for the claim are 4466. On October 3, 2007, Claim Number 12 was amended.[4] Amended Claim Number 12 states that the claimant is B-Real, LLC/Chase Bank USA, NA; the account number is 4466; the amount is $3,908.82. Included with Amended Claim Number 12 is a Bill of Sale that refers to a "Confidential Agreement for the Purchase of Chapter 13 Receivables" dated January 1, 2006, between Chase Bank USA, N.A., as seller, and B-Line L.L.C. as purchaser, and that certain receivables are assigned, which it recites are described on an Exhibit "I." There is no Exhibit "I" attached to the Bill of Sale, however. The Court will refer to the holder of Claim Number 12 as "B-Real."

The debtors' Schedule F, which lists unsecured creditors holding non-priority claims, lists Kawasaki as an unsecured creditor in the amount of $2,565.19, under account number 0175. B-Line contends that this claim corresponds with Claim Number 8. Schedule F lists an unsecured claim of HSBC Retail Services in the amount of $688.95, under account number 5261. B-Line contends that this claim corresponds with Claim Number 9. The schedules include an unsecured claim of Retail Services in the amount of $2,075.79, under account number 0003. B-Line

---

[4]The Amended Claim was not offered into evidence; the Court takes judicial notice of Amended Claim Number 12.

contends that this claim corresponds with Claim Number 10.  The schedules include an unsecured claim of Bank One in the amount of $3,653.19, under account number 4466.  B-Real contends that this scheduled claim corresponds with Claim Number 12.

### Discussion

The debtors' objections to the four proofs of claim, all filed on August 9, 2007, object to each of the claims on the basis that (1) they do not comply with Rule 3001(c) of the Federal Rules of Bankruptcy Procedure because writings evidencing the claims are not included; (2) they do not contain an itemization of interest and other charges as required; (3) they do not contain a copy of documents evidencing the assignment, transfer or sale of the claims to B-Line, LLC/Collect America (with respect to Claim Numbers 8, 9, and 10) or to B-Real (with respect to Claim Number 12); and (4) they do not correspond with any debts reflected on the debtors' schedules, and they (the debtors) have no recollection of the claim.  The debtors submit that because of the deficiencies in each of the proofs of claim, they each lose prima facie validity, and request that each claim be disallowed.

B-Line and B-Real submit that the failure to attach a writing is not a basis itself for disallowance of their claims and that, as a practical matter, the debtors have no objection to either the liability represented by or the amount of each claim.  As a result, they submit that the objections do not raise any substantive basis for disallowance of the claims as required by Section 502 of the Bankruptcy Code and that the claims should be allowed as filed.

A proof of claim is a written statement setting forth a creditor's claim against the bankruptcy estate.  Bankruptcy Rule 3001(a).  The written statement shall conform substantially to the appropriate official form.  *Id*.  *See also In re Armstrong*, 320 B.R. 97, 103 (Bankr. N.D.

Tex. 2005).  When a claim is based on a writing, the original or a duplicate shall be filed with the proof of claim.  Bankruptcy Rule 3001(c).  If the writing has been lost or destroyed, a statement of the circumstances of the loss or destruction shall be filed with the claim.  *Id*.  Official Form 10, for a proof of claim, underscores the rule as it provides that a copy of the supporting documents for the claim must be attached to the proof of claim.  *See In re Armstrong*, 320 B.R. at 103.  A summary can be used if the supporting documents are too voluminous.  *Id*.  If the claim includes pre-petition interest, attorney's fees, or other charges, a statement providing a breakdown of the elements of the claim is required.  *Id*.  If the creditor is an assignee of the debtor's original creditor, the filing creditor must attach a copy of the assignment and sufficient other information to evidence the filing creditor's ownership of the claim.  *Id*. at 106.  If, for example, a credit card account was assigned or transferred to the claim-filing creditor, such creditor should attach a copy of the assignment and sufficient other documentation to identify the original credit card account.  *Id*.

If the proof of claim is timely filed with the court and is in the form of Official Form 10, or a form that substantially conforms to Official Form 10, the basic requirements for a proof of claim under Bankruptcy Rule 3001 will be satisfied.[5]  If a proof of claim is filed in the proper form and has attached to it copies of the required documents, it is deemed prima facie valid in the amount claimed.  Bankruptcy Rule 3001(f).  A failure to fully comply with Rule 3001 by, for example, failing to include certain required documents with the proof of claim, will result in a loss of the proof of claim's prima facie validity, but it will not necessarily result in disallowance of the

[5]Bankruptcy Rule 3001 requires that a proof of claim (1) be in writing; (2) make demand on the debtor's estate; (3) express the intent to hold the debtor liable for the debt; (4) be properly filed; and (5) be based upon facts which would allow, as a matter of equity, to have document accepted as a proof of claim.  *In re Armstrong*, 320 B.R. at 103-104.

claim. *In re Armstrong*, 320 B.R. at 104.

The objections here are based principally on the claimants', B-Line's and B-Real's, failure to attach copies of required documents or to provide a breakdown of the debt. Partly as a result of these deficiencies, the debtors cannot, they contend, match the proofs of claim with their scheduled list of creditors. Each of the original proofs of claims here does not include a copy of any written documentation to evidence the basis for the claim and does not include a copy of an assignment instrument that allows the debtors (or a trustee) to link the ownership of the claim from the claimant to the debtors' original creditor.

The Bankruptcy Court for the Northern District of Texas, in *In re Rochester*, elaborated on the requirements for and the problems associated with assigned claims.[6]  In *Rochester*, eCAST, a creditor whose claim was objected to, requested that the court reconsider its holding in *Armstrong* that a copy of an assignment document must be included with its proof of claim.  *In re Rochester*, 2005 WL at *2.  The court, the Honorable Barbara J. Houser presiding, denied eCAST's request and, in so doing, rejected eCAST's argument that Rule 3001(e), which addresses transferred claims, excuses a creditor that holds an assigned or transferred claim from including documents of the transferred or assigned claim if the creditor obtained the claim before a proof of claim is filed.[7]  *Id*. at *7.  In a well-reasoned opinion, Judge Houser noted that Rule

---

[6]The *Rochester* opinion was issued in both *In re Richard Rochester and Sharlene Rochester*, case number 03-32184-BJH-13, and *In re Angelo Manasan and Jean Manasan*, case number 03-34099-BJH-13.  The Rochesters and the Manasans were two of the joint debtors that were addressed by the court in the *Armstrong* opinion, which was issued in eight jointly considered cases.  *In re Rochester*, No. 03-32184-BJH-13, 2005 WL 3670877 (Bankr. N.D. Tex. 2005).

[7]This argument arises from an inference made upon a review of Rule 3001(e)(2).  This rule requires that if a claim has been transferred after the proof of claim has been filed, evidence of the transfer shall be filed by the transferee.  The inference is that evidence of the transfer is *not* required if the transfer or assignment occurred prior to the filing of a proof of claim.

3001(e) speaks to the relative rights as between a transferor and a transferee, and not to the

requirements for a proof of claim. *Id*. at *2. She stated as follows:

> [Rule 3001(e)] does not address the proper evidentiary basis for a proof of claim as
> against the debtor. Simply put, under Rule 3001(e), once a creditor has come forward
> and asserted a right to payment from the estate by filing a proof of claim, the rule
> requires that a different party asserting that same right must file evidence of the
> transfer in order to show that it now holds the right to payment. Rule 3001(e)
> provides that the clerk then sends notice and an opportunity to object to the original
> claimant (notably, not to the debtor), so that the original claimant may appear and
> contest the validity of the purported transfer. If , however, the original creditor has
> never asserted a right to payment from the estate by filing a proof of claim, then
> evidence of a transfer is not required. As the Advisory Committee Note makes clear,
> the intent of the drafters in amending the rule was to remove bankruptcy courts from
> the business of policing claims traffic. The bankruptcy court's role has been
> eliminated except where there is a dispute between a transferor and a transferee
> which affects the estate – *i.e.,* where both are claiming a right to payment. Therefore,
> no evidence of transfer is required where no proof of claim has been filed prior to the
> transfer. The bankruptcy court will make a judicial determination as between
> competing claimants only where the transferor objects to the transferee's assertion
> that a transfer has taken place. In short, Rule 3001(e) simply addresses the relative
> rights of a claim transferee and transferor. . . . In contrast, subsections (a), (b), (c) and
> (d) of Rule 3001 address what is required to assert a claim against the debtor, and to
> have that claim accorded *prima facie* effect.
>
> Even assuming that eCAST is correct – *i.e.,* that Rule 3001(e) does not require
> an entity who purchases or takes an assignment of a claim before a proof of claim is
> filed to file evidence of the transfer, Rule 3001(e) does not purport to excuse a
> creditor's compliance with the other subsections of Rule 3001. While eCAST argues
> that Rule 3001(c) does not require it to attach a transfer document to its proof of
> claim, the Court disagrees. Rule 3001(c) states that when a claim is based on a
> writing, the original or a duplicate shall be filed with the proof of claim.

*Id*. at *3-4.

Judge Houser then described the three categories of assignments and other

documentation included with the claims there and whether they satisfied the requirement to

attach documentary evidence to a proof of claim. *Id*. at *5-7. The first and easiest category were

the proofs of claim that were accompanied with an assignment agreement under which the

assignor was also a creditor listed on the debtor's schedules and the assignee was the claimant. *Id*. at \*5. Though the assignment did not identify the specific account transferred to eCAST, copies of account statements provided by eCAST that matched the account number listed by the debtor with the assignment were sufficient to satisfy Rule 3001. *Id*. at \*5-6.

The second category concerned proofs of claim where the blanket assignment did not identify an assignor on the debtor's schedules but there were other documents, along with the assignment, that linked the assignor with a creditor listed on the schedules and, then, with the claimant. *Id*. at \*6. This was also sufficient to satisfy the requirement to include appropriate documentation with the proof of claim. *Id*.

The third category was a proof of claim with a blanket assignment that identified an assignor that was not listed as a creditor on the debtor's schedules, and the additional documents included with the proof of claim and assignment did not provide a basis to link the two. *Id*. at \*7. This was insufficient because the debtor, upon review of the assignment and supporting documents, was not able to discern the relationship, if any, between the two. *Id*. In this third category, eCAST was the claimant and filed its proof of claim stating it was an "assignee of General Electric Private Label/Sam's Club Consumer." *Id*. The debtors, the Rochesters, listed "Sam's Club" as a creditor on their schedules. *Id*. The blanket assignment did not, however, identify Sam's Club as an assignor. *Id*. eCAST failed to provide any other documentation that identified Sam's Club as an assignor or otherwise linked Sam's Club with the assignors that were named. *Id*. The court held that, in the absence of this evidentiary link, the objection to the claim would be sustained, unless eCAST could produce additional evidence to support its right to assert the Sam's Club claim against the debtors. *Id*.

It is important to note that a copy of the actual assignment was included in all three categories described in *Rochester*. *See generally id.* Here, no assignment is included with the original proofs of claim. The original claims, therefore, cannot be accorded prima facie validity as the transferees, B-Line and B-Real, have an obligation under Bankruptcy Rule 3001 to document their ownership of the claims they file. *In re Armstrong*, 320 B.R. at 106. A copy of the assignment is needed to satisfy Rule 3001(c)'s requirement to include a copy of the writing(s) upon which the claim is based. Bankruptcy Rule 3001(c). As with eCAST's claims in *Rochester*, B-Line's and B-Real's claims are likewise based on a written assignment because they are stepping into the original creditors' shoes. *See In re Rochester*, 2005 at *4.

If a proof of claim is not prima facie valid, and assuming the parties are acting in good faith, the claims-objection process should unfold as outlined in *Armstrong*:

> . . . a proof of claim filed without the requisite documentation lacks *prima facie* validity. Yet, without an objection, the claim will be allowed. 11 U.S.C. § 502(a). Consequently, a debtor acts in good faith by objecting to a proof of claim that lacks the requisite documentation. . . .
>
> If the creditor fails to respond to the objection, the court would expect the debtor to request that the claim be disallowed. If the creditor supplies the documentation in response to the objection, the court would expect the debtor to withdraw his or her objection. If the creditor does not produce the documentation until a hearing, the creditor would have the burden of proof to establish its claim by a preponderance of the evidence.

*In re Armstrong*, 320 B.R. at 107-108. B-Line and B-Real did not provide assignment documents until after the claim objections were filed. B-Line and B-Real contend that the debtors do not dispute the amounts or the validity of the debts; rather, their objections go only to the lack of documentation and therefore fail to raise any one of the bases for disallowance set forth at section 502(b) of the Bankruptcy Code.

- 10 -

B-Line's and B-Real's characterization of the debtors' objections is not entirely accurate, however. The objections state that the debtors have no recollection of the debts represented by the proofs of claim. The debtors do not list debts held by B-Line or B-Real on their schedules. The debtors have clearly placed at issue the question of whether B-Line and B-Real are holders of valid claims against them. While such objections arguably arise from the lack of documentation, the lack of documentation has the effect of shifting the burden to B-Line and B-Real to prove the validity, ownership, and amount of their claims in the same manner as if they were suing the debtors in state court. *In re Kendall*, 380 B.R. 37, 46 (Bankr. N.D. Okla. 2007). Section 502(b)(1) provides that a claim is allowed except to the extent it is unenforceable under applicable law. 11 U.S.C. § 502(b)(1). Applicable law requires that B-Line and B-Real prove that they are holders of the claims represented by the proofs of claim. *See In re Kendall*, 380 B.R. at 46.[8]

At the hearing held on the objections, the evidence that was introduced in support of the claims consists of the debtors' schedules and copies of the original proofs of claim, each of which are described in detail above. The original claims do not contain copies of documentation evidencing either the original accounts or the transfer of the accounts. Neither the original claims nor the amended claims include any documents of the original accounts; the amended claims include assignments, but the assignments do not link the named assignors (or sellers) with a creditor listed by the debtors on their schedules. The debtors lodged their objections in good

---

[8]In their brief, B-Line and B-Real cite several cases from each of the federal circuits in support of their position. These cases are generally cited for the proposition that a lack of documentation does not itself cause disallowance of a claim. In fact, if an objection is based solely on a lack of documentation for the claim but the debtor has listed an amount equal to or greater than the claim and in the name of the claimant, such claim should be allowed. In such instance, the debtor has agreed to the ownership, amount, and liability represented by the proof of claim. To the extent the cited cases support the proposition that a creditor need not provide further evidence if there is no real factual dispute, the Court agrees with such cases.

faith.  The objections pointed out the deficiencies in the proofs of claim.  The claims lost their

prima facie validity; B-Line and B-Real were, therefore, put to the burden of establishing that

their proofs of claim were valid.  To prove the validity of their claims, they must prove that they

are the holders of the claims they assert.  To do this, they are required to provide evidence that

links the original creditor of the debtors with the present holder of the claim.  They failed in this

regard and thus their claims must be disallowed.

### End of Memorandum Opinion ###